UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TREEHOUSE FOODS, INC., | : | |
| BAY VALLEY FOODS, LLC, | : | |
| FLAGSTONE FOODS, INC., | : | NO: 1:18-cv-01412 |
| TREEHOUSE PRIVATE BRANDS, INC. | : | Honorable Rebecca R. Pallmeyer |
| LLOYD'S SYNDICATE CVS 1919, | : | |
| as subrogee of TREEHOUSE FOODS, INC. | : | |
| | : | AMENDED COMPLAINT |
| Plaintiffs, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| SUNOPTA GRAINS AND FOODS INC. | : | |
| | : | |
| Defendant. | : | |

The plaintiffs, by and through counsel, file this Amended Complaint against defendant SunOpta Grains and Foods Inc., and in support thereof aver as follows:

**PARTIES**

1.      The plaintiff  TreeHouse Foods, Inc. is a Delaware corporation with its principal place of business located at 2021 Spring Road, Oak Brook, Illinois 60523.

2.      The plaintiff  Bay Valley Foods, LLC is a Delaware corporation with its principal place of business located at 2021 Spring Road, Oak Brook, Illinois 60523.  Bay Valley Foods, LLC is the operating company for, and wholly owned subsidiary of, plaintiff TreeHouse Foods, Inc.

3.      The plaintiff  Flagstone Foods, Inc. is a Delaware corporation with its principal place of business located at 2021 Spring Road, Oak Brook, Illinois 60523.  Flagstone Foods, Inc. is a wholly owned subsidiary of Bay Valley Foods, LLC and was acquired by Bay Valley Foods, LLC in June, 2014.

4.      The plaintiff  TreeHouse Private Brands, Inc. is a Missouri corporation with its principal place of business located at 2021 Spring Road, Oak Brook, Illinois 60523.  Bay Valley

Foods, LLC acquired Ralcorp Holdings, Inc. from ConAgra on February 1, 2016 and subsequently changed its name from Ralcorp Holdings, Inc. to TreeHouse Private Brands, Inc.

5. The plaintiff Lloyds Syndicate CVS 1919 ("Starr") is an insurance underwriting entity with a principal place of business located at 140 Leadenhall Street, London EC3V 4QT, United Kingdom. Starr is authorized to issue insurance policies within the United States, including in the State of Illinois.

6. Defendant SunOpta Grains and Foods Inc. ("SunOpta") is a Minnesota corporation, with its principal place of business located at 7301 Ohms Lane, Suite 600, Edina, Minnesota 55439.

## FACTS

7. TreeHouse is a producer, manufacturer, reseller, processor, and packager of various foods products in the United States.

8. TreeHouse purchases raw materials used to process and manufacture its products from various suppliers, including defendant SunOpta.

9. At all times material hereto, Starr provided certain insurance coverages to TreeHouse Foods, Inc., including its related and affiliated companies plaintiffs Bay Valley Foods, LLC, Flagstone Foods, Inc., and TreeHouse Private Brands, Inc. (collectively "TreeHouse") pursuant to Policy No. CZ1500267, with effective dates from June 27, 2015 to June 27, 2016. (See Exhibit "A").

10. SunOpta is a seller, distributor, manufacturer, supplier and merchant of sunflower kernels.

11. The sunflower kernels sold by SunOpta are used by TreeHouse in its production of various foods products.

12. At all times material hereto, SunOpta was involved in significant and systematic business activities in the State of Illinois and is subject to personal jurisdiction in the State of Illinois and Cook County, Illinois. SunOpta maintains a registered agent for service of legal process at 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604.

13. On May 2, 2016, SunOpta announced a recall of its sunflower kernel products produced at its Crookston, Minnesota plant between February 1, 2016 and February 19, 2016, (the "initial recall") including the sunflower kernels sold to TreeHouse because of the presence of Listeria monocytogenes ("Listeria"). (See Exhibit "B").

14. Listeria is an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. Although healthy individuals may suffer only short term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, listeria infection can cause miscarriages and stillbirths among pregnant women.

15. Prior to the initial recall, SunOpta represented to Treehouse that the sunflower kernel products were tested for microbial pathogens, and SunOpta produced Certificates of Analysis to TreeHouse representing the sunflower kernel products were free of contaminants.

16. Prior to the initial recall, SunOpta represented to TreeHouse that its oil roasters in its Crookson, Minnesota plant were properly validated and acted as a certified "kill step" in preventing microbial population and pathogen control based on testing performed at Deibel Laboratories in Gainesville, Florida and Dahlgren & Company in Crookson, Minnesota.

17. Prior to the initial recall, SunOpta provided Specifications to its customers, including TreeHouse, which contained microbial requirements and which promised that sunflower kernel products would be manufactured by SunOpta in accordance with Good Manufacturing Practices as set forth in the Code of Federal Regulations, 21 CFR §110.

18. Prior to the initial recall, SunOpta was in the business of supplying health and safety information to its customers, including TreeHouse, along with its products since an essential element of its transactions with customers included representations, promises, and assurances that the sunflower kernel products produced, tested, and sold by SunOpta to TreeHouse were free of contaminants.

19. Prior to the initial recall, SunOpta provided information to TreeHouse which was intended to be used by TreeHouse for guidance in its processing and use of SunOpta sunflower kernel products.

20. Prior to the initial recall, SunOpta was not acting as a mere "conduit" of information that flowed from a third party to TreeHouse; instead SunOpta provided information to TreeHouse based upon SunOpta's own directions, specifications, processing facilities, cleaning, processes, equipment, testing, environmental controls and analysis intended to prevent the sale of harmful and unhealthy products.

21. Prior to the initial recall, the information and representations provided by SunOpta to TreeHouse were not merely ancillary to the sale of the sunflower kernel products to TreeHouse.

22. On May 18, 2016, SunOpta expanded the initial recall to include products produced between February 20, 2016 and April 21, 2016. (See Exhibit "C").

23. On June 1, 2016, SunOpta further expanded the initial and second recall to include products produced between May 31, 2015 and January 31, 2016 (the "recalls"). (See Exhibit "D").

24. More than 5,000,000 pounds of contaminated sunflower kernels were sold and supplied by SunOpta to TreeHouse and subject to the recalls identified above.

25. Prior to the recalls, SunOpta knew or had reason to know the purposes for which TreeHouse purchased SunOpta sunflower kernels.

26. Prior to the recalls, SunOpta knew, or had reason to know, that TreeHouse relied on SunOpta to provide products and materials that were safe and fit for use in human consumable products.

27. Prior to the recalls, TreeHouse reasonably relied on SunOpta to sell, supply, distribute, and provide sunflower kernels to TreeHouse that were safe and fit for use in human consumable products.

28. Prior to the recalls, SunOpta negligently misrepresented to TreeHouse that the sunflower kernels it sold and supplied to TreeHouse were free of contaminants that would cause serious and potentially deadly health and safety problems for human consumers of the TreeHouse products.

29. Prior to the recalls, TreeHouse reasonably relied on SunOpta's misrepresentations that the sunflower kernels sold and supplied to TreeHouse were free of contaminants which would cause serious and potentially deadly health and safety problems for human consumers of the TreeHouse products.

30. The sunflower kernels sold and supplied by SunOpta to TreeHouse and subject to the recalls were defective and in an unreasonably dangerous condition at the time the products were delivered by SunOpta to TreeHouse.

31. The contamination to the SunOpta sunflower kernels subject to the recalls occurred suddenly and immediately upon contact between the sunflower kernels and the listeria organism.

32. The damage to the TreeHouse raw materials, finished goods and products, caused by the contaminated sunflower kernels subject to the recalls occurred suddenly and immediately upon contact between the sunflower kernels and TreeHouse property.

33. The damage to the TreeHouse finished goods and products and cross-contaminated products was separate from and extrinsic to the defective, listeria contaminated SunOpta sunflower kernels subject to the recalls.

34. The contaminated and defective condition of the SunOpta sunflower kernels subject to the recalls created a dangerous, unhealthy, and potentially deadly characteristic of the sunflower kernel products sold by SunOpta to TreeHouse.

35. The defective sunflower kernels sold and supplied by SunOpta to TreeHouse subject to the recalls caused damage to other property aside from the sunflower kernel products themselves.

36. The defective and dangerous sunflower kernels subject to the recalls were incorporated into final products formulated, mixed, manufactured, and packaged by TreeHouse and damaged those finished products.

37. The defective and dangerous sunflower kernels subject to the recalls were repackaged by TreeHouse and unknowingly sold and supplied by TreeHouse to its customers in a contaminated condition.

38. The contaminated sunflower kernels supplied by SunOpta to TreeHouse were unreasonably dangerous in that on contact they would suddenly and immediately contaminate, and thereby damage, TreeHouse's equipment and machinery. TreeHouse's equipment and machinery was thereby rendered inherently dangerous in that on contact the equipment and machinery would suddenly and immediately contaminate, and thereby damage, other raw materials and finished products processed in TreeHouse's facilities.

39. Once introduced into TreeHouse's facilities, the defective and dangerous sunflower kernels were processed by TreeHouse on its equipment and machinery. Because TreeHouse was unaware that the sunflower kernels were contaminated, this same equipment and machinery was subsequently utilized by TreeHouse in the ordinary course of business to process various products that did not contain the contaminated sunflower kernels. Because the machinery and equipment had been contaminated by SunOpta's sunflower kernels, the other products were also contaminated, necessitating their recall and destruction.

40. As a result of the recalls identified above, TreeHouse was required to destroy contaminated products in its possession, including contaminated sunflower kernels, finished products that incorporated the contaminated sunflower kernels, and finished products that were made on equipment that had been contaminated by SunOpta's sunflower kernels. In addition, TreeHouse was required to recall from customers and destroy finished products that contained the contaminated sunflower kernels or which were manufactured on contaminated equipment, provide credit memos and discounts to such customers, and incur extra expenses and business interruption losses, all due to the SunOpta recalls.

41. The policy of insurance issued by Starr to TreeHouse provided certain coverages for Product Contamination damages and claims, including losses sustained by TreeHouse as a result of the SunOpta recalls.

42. TreeHouse has made claims totaling $16,165,000.00 to Starr pursuant to the insurance policy for damages caused by the SunOpta recalls, and Starr has issued payment to date to TreeHouse in the amount of $8,000,000 in response to those claims.

43. By virtue of Starr's $8,000,000 payment to TreeHouse, Starr is legally, equitably, and contractually subrogated to claims against third parties responsible for those damages, including SunOpta.

44. The damages sustained by TreeHouse and consequently by Starr, were caused by SunOpta's negligence, negligent misrepresentation, manufacture, sale and supply of defective products and materials, breach of contract, breach of express warranty, breach of indemnity promises, breach of implied warranties of merchantability and breach of fitness for a particular purpose, as more fully set forth below.

## COUNT I – NEGLIGENCE

45. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

46. The damages sustained by the plaintiffs were caused by the negligence, carelessness, acts, omissions, and misrepresentations of SunOpta in that it:

    (a) Failed to properly test the sunflower kernels sold and supplied to TreeHouse;

    (b) Failed to properly inspect the sunflower kernels sold and supplied to TreeHouse;

    (c) Failed to utilize a proper and effective quality control program;

    (d) Failed to utilize a proper and effective quality assurance program;

    (e) Failed to properly maintain a sterile environment, free of contaminants, during the processing of its sunflower kernel products;

    (f) Failed to properly vet, control, select, perform background checks, and instruct suppliers of its sunflower kernel products;

    (g)    Failed to properly train its employees, agents, subcontractors, and workmen in safe processing and handling of sunflower kernel products sold to its customers;

    (h)    Misrepresented that products sold and supplied to TreeHouse were safe and fit for human consumption and free from any contaminants that presented health and safety risks; and;

    (i)    Violated applicable codes, regulations, standards, and practices associated with the safe processing, manufacturing, sale and supply of materials intended for human consumption, including but not limited to 21 CFR §110.

    (j)    Failed to satisfy its extra contractual duty to communicate accurate information relating to the quality and characteristics of the sunflower kernel products.

47.    The negligence, carelessness, acts, omissions, and misrepresentations of SunOpta as set forth above were the legal and proximate cause of the damages sustained by the plaintiffs.

WHEREFORE, plaintiffs demand judgment in their favor in the amount of $16,165,000.00 together with interest, costs and such other relief as the Court deems appropriate.

## COUNT II – NEGLIGENT MISREPRESENTATION

48.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

49.    SunOpta is in the business of selling and supplying food products, raw materials and ingredients, and providing and supplying to its customers specifications and information with respect to the characteristics, quality, and safety of its products and compliance with specifications, testing parameters, criteria, analysis, and federal Food and Drug Administration and related state and local regulations which accompany the sale of its products.

50.    The health and safety information supplied by SunOpta by its customers, including TreeHouse, is intended to be used by its customers as guidance in their business dealings to the extent that customers incorporate, utilize, and process products sold by SunOpta , including sunflower seed kernel products.

51.    Prior to the recalls that are the subject of this litigation, SunOpta provided information to TreeHouse with respect to the contaminated sunflower kernel products that was

8

false and a misrepresentation since the sunflower seed kernels were contaminated with listeria despite SunOpta's representations that its testing, analysis, and roasting process would prevent microbial population and pathogen contamination.

52. The information supplied by SunOpta, in the nature of representations with respect to the characteristics of the SunOpta sunflower seed kernels, was supplied by SunOpta to TreeHouse and used by TreeHouse in its business dealings prior to the recalls which are the subject of this litigation.

53. The negligent misrepresentations by SunOpta as set forth above caused TreeHouse to utilize, process, repackage, and unknowingly sell listeria contaminated products to TreeHouse's customers.

54. The negligent misrepresentations of TreeHouse as set forth above were a legal and proximate cause of the damages sustained by TreeHouse as a result of the recalls.

55. Had SunOpta not supplied misleading information and misrepresentations to TreeHouse, TreeHouse would not have sustained the damages resulting from the recalls and claimed in this Amended Complaint.

WHEREFORE, plaintiffs demand judgment in their favor in the amount of $16,165,000.00 together with interest, costs and such other relief as the Court deems appropriate.

## COUNT III – PRODUCT LIABILITY

56. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

57. The sunflower kernels sold and supplied by SunOpta to TreeHouse were defective and unreasonably dangerous because they were contaminated with Listeria, a bacteria that presents serious and substantial health and safety risks to humans when consumed.

58. The defective condition of the SunOpta sunflower kernels existed at the time those products left the control of SunOpta.

59. The contaminated sunflower kernels arrived at the TreeHouse processing facilities without any material or substantial change, alteration, or abuse from the condition the products were in at the time they left the control of SunOpta.

60. The defects that existed in the SunOpta sunflower kernels were a result of SunOpta's processing and manufacturing activities.

61. SunOpta failed to warn, instruct, or advise TreeHouse of the dangerous and defective condition of the sunflower kernels sold and supplied to TreeHouse.

62. The risks associated with SunOpta's sale, supply, and distribution of the contaminated sunflower kernels exceeded and outweighed any utility or benefit to TreeHouse from the use of the sunflower kernels.

63. No reasonable consumer, including TreeHouse, would expect that sunflower kernels would be supplied by SunOpta or any other supplier in a contaminated condition and without a warning that it was unsafe to use the kernels in food products intended for human consumption.

64. The defective and unreasonably dangerous condition of the contaminated sunflower kernels was the legal and proximate cause of the damages sustained by the plaintiffs.

WHEREFORE, plaintiffs demand judgment in their favor in the amount of $16,165,000 together with interest, costs and such other relief as the Court deems appropriate.

### COUNT IV– BREACH OF CONTRACT/BREACH OF EXPRESS WARRANTY/INDEMNITY

65. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

66. Pursuant to various Purchase Orders issued by TreeHouse, SunOpta warranted that the sunflower kernels it sold would:

    (a)    Conform to the descriptions, drawings, specifications and standards of TreeHouse;

    (b)    Be of good material, quality, design, and workmanship;

    (c)    Be free from defects;

(d) Be safe and fit for the ordinary purposes for which the kernels are used and for which TreeHouse intended;

(e) Be merchantable and pass without objection in the trade;

(f) Run without variation and be of even kind, quality, and quantity within each unit and among all units;

(g) Comply with all federal, state, municipal and local laws, rules, regulations, ordinances, and directions existing at the time of delivery; and

(h) Not impart any unintended flavor, odor, or color, and that any color additives used, to the extent required by law, are from batches certified in accordance with the applicable regulations promulgated under the Federal Food, Drug and Cosmetic Act.

67. SunOpta breached the express promises and warranties set forth above by selling and supplying products and materials to TreeHouse that were defective, unreasonably dangerous, not safe or fit for human consumption, and failed to comply with the specifications for the products because of the presence of Listeria, as more fully described above.

68. SunOpta also agreed to defend, indemnify, and hold harmless TreeHouse, its affiliated companies, and its and their directors, officers, and employees, against all damages, liabilities, claims, losses and expenses, including without limitation attorneys' fees, loss of production time, and lost profits arising out of, or resulting in any way from, any act or omission of SunOpta or of its agents or contractors.

69. SunOpta's breach of contract, breach of express warranty, and breach of its indemnity promises were the legal and proximate cause of the damages sustained by the plaintiffs.

WHEREFORE, plaintiffs demand judgment in their favor in the amount of $16,165,000 together with interest, costs and such other relief as the Court deems appropriate.

**COUNT V– BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

70. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

71. SunOpta knew that the sunflower kernels were sold and supplied to TreeHouse and were to be used for TreeHouse's resale, distribution, processing, mixing, manufacturing, and sale to consumers for human consumption.

72. SunOpta knew that in order for sunflower kernels that were intended to be processed, manufactured, sold, and distributed by TreeHouse to be safe and fit for human consumption, the sunflower kernels sold and supplied by SunOpta to TreeHouse were required to be free of contaminants such as Listeria.

73. SunOpta impliedly warranted that the sunflower kernels sold to TreeHouse were safe and fit for the particular purpose of being consumed by humans without any health or safety risks or hazards.

74. SunOpta breached its implied warranty of fitness for a particular purpose by virtue of the fact that the sunflower kernels were not safe or fit for human consumption because of the presence of Listeria and the serious and significant health and safety hazards and risks presented to humans.

75. SunOpta's breach of its implied warranty of fitness for a particular purpose was the legal and proximate cause of the damages sustained by Starr.

WHEREFORE, the plaintiffs demand judgment in their favor in the amount of $16,165,000 together with interest, costs and such other relief as the Court deems appropriate.

## COUNT VI– BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

76. The plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

77. SunOpta impliedly warranted to TreeHouse that the sunflower kernels it sold and supplied to TreeHouse were merchantable for use as a product which would be safe and fit for human consumption without presenting any health and safety risk.

78. In order for the SunOpta sunflower kernels to be "merchantable," they were required to pass without objection in the trade under the contract description; be of fair average

quality within the description; be fit for the ordinary purposes for which such goods are used; run, within the variation permitted by the agreement, of even kind, quality and quantity within each unit; be adequately contained, packaged, and labeled as the agreement may require; and conform to the promises or affirmations of fact made on their containers or labels.

79. The sunflower kernels sold and supplied by SunOpta to TreeHouse were not merchantable because of the presence of Listeria which presented serious and substantial health and safety risks to consumers of the products that incorporated the sunflower kernels.

80. SunOpta breached its implied warranty of merchantability by virtue of selling and supplying to TreeHouse sunflower kernels that contained Listeria as more fully described above.

81. SunOpta's breach of its implied warranty of merchantability was the legal and proximate cause of the damages sustained by the plaintiffs.

WHEREFORE, the plaintiffs demand judgment in their favor in the amount of $16,165,000 together with interest, costs and such other relief as the Court deems appropriate.

## COUNT VII-- CONTRIBUTION AND INDEMNITY

82. The plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

83. The damages suffered by TreeHouse and claimed from Starr pursuant to the insurance policy issued by Starr include payments, credits, discounts, and other valuable consideration extended by TreeHouse to its customers impacted by the SunOpta recalls.

84. SunOpta is liable to TreeHouse, and pursuant to the concept of subrogation to Starr, for contribution and/or indemnity resulting from TreeHouse's payments, credits, discounts, and other valuable consideration extended to TreeHouse's customers impacted by the SunOpta recalls because the damages to TreeHouse's customers were caused by SunOpta's negligence, negligent misrepresentations, supply of defective products, and breaches of express and implied warranties.

85. The plaintiffs' rights to contribution and/or indemnity from SunOpta for those damages described above arise from the acts and omissions of SunOpta set forth in Counts I through V, above, which are incorporated herein as though fully set forth.

86. The plaintiffs' rights to indemnity from SunOpta for those damages described above arises from the acts and omissions of SunOpta set forth in Counts I through V, above, which are incorporated herein as though fully set forth.

WHEREFORE, the plaintiffs demand judgment in their favor in the amount of $16,165,000 together with interest, costs and such other relief as the Court deems appropriate.

## COUNT VIII – BREACH OF CONTINUING PRODUCT GUARANTEES

87. The plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

88. Beginning at least as early as 2002, SunOpta issued a series of continuing product guarantees (collectively referred to herein as the "Guarantees") to Plaintiffs, which included but are not limited to the following:

(a) On March 20, 2014, SunOpta issued the Continuing Pure Food Guarantee attached as Exhibit E hereto to Snacks Holding Corporation, which is now known as Flagstone Foods, Inc., and its affiliates.

(b) January 22, 2016, SunOpta issued the Continuing Product Guarantee attached as Exhibit F hereto to Bay Valley Foods, LLC, and its subsidiaries and affiliates.

(c) From 2012 through 2015, SunOpta issued product guarantees to ConAgra Inc.'s Lakeville, Minnesota facility, attached as group Exhibit G, which facility is now owned by TreeHouse Private Brands, a wholly-owned subsidiary of Bay Valley Foods, LLC.

89. According to its terms, each of the foregoing Guarantees remained in effect until revocation upon written notice by either Plaintiffs or SunOpta. No such revocation notice was ever given by either party.

90. Pursuant to each of the foregoing Guarantees, Defendant warranted, *inter alia*, that all products sold to Plaintiffs by SunOpta will comply with the Federal Food, Drug and Cosmetic Act ("Act"), and are not misbranded or adulterated, within the meaning of the Act.

91. Food products that are contaminated or potentially contaminated with Listeria monocytogenes are adulterated within the meaning of the Act. Accordingly, SunOpta's sale of adulterated sunflower kernels breached the terms of the Guarantees.

92. In the March 20, 2014, and January 22, 2016 Guarantees, Exhibits E and F, SunOpta promised to indemnify and hold Plaintiffs harmless from any "loss or expense (including reasonable attorney fees) arising out of the testing, purchase, use, consumption, sale or resale" of products supplied by SunOpta.

93. The Guarantees were a required and essential element of the relationship between Plaintiffs and SunOpta. If SunOpta had not issued the Guarantees, which are a standard practice in the industry, Plaintiffs would not have purchased any sunflower kernels from SunOpta.

94. SunOpta understood the significance of these Guarantees to the TreeHouse Plaintiffs, as evidenced by SunOpta's acknowledgement of receipt and agreement to comply with the TreeHouse Supplier Quality Expectations Manual, which in turn specifically required SunOpta to issue the Guarantees.

95. The Guarantees are valid and binding independent obligations of SunOpta, enforceable by Plaintiffs according to their terms.

WHEREFORE, the plaintiffs demand judgment in their favor in the amount of $16,165,000 together with interest, costs, attorneys fees under the March 20, 2014, and January 22, 2016 guarantees, and such other relief as the Court deems appropriate.

Dated: October 12, 2018	/s/Gerald G. Saltarelli
	Gerald G. Saltarelli
	Saltarelli ADR, LLC
	321 North Clark Street, Suite 400
	Chicago, IL 60654
	gerry@saltarelliadr.com
	Phone: 847-945-8492

Randi L. Ellias
Jason S. Dubner
Butler Rubin Saltarelli & Boyd, LLP
321 North Clark Street, Suite 400
Chicago, IL 60654
rellias@butlerrubin.com
Phone: 312-444-9660

*Attorneys for TreeHouse Foods, Inc., Bay Valley Foods, LLC, Flagstone Foods, Inc. and TreeHouse Private Brands, Inc.*

/s/Philip T. Carroll
Philip T. Carroll
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
pcarroll@cozen.com
Phone: 312-382-3147

/s/Paul R. Bartolacci
Paul R. Bartolacci
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
pbartolacci@cozen.com
Phone: 215-665-2001

*Attorneys for Plaintiff Lloyd's Syndicate CVS 1919*

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, certifies that he served a copy of the foregoing *Amended Complaint*, pursuant to Court Order (Dkt 64) by causing a copy thereof to be sent by U.S. District Court CM/ECF e-filing system on the 12th day of October, 2018.

/s/Jason S. Dubner
Gerald G. Saltarelli
Saltarelli ADR, LLC
321 North Clark Street, Suite 400
Chicago, IL 60654
gerry@saltarelliadr.com
Phone: 847-945-8492

Randi Ellias
Jason S. Dubner
Butler Rubin Saltarelli & Boyd, LLP
321 North Clark Street, Suite 400
Chicago, IL 60654
rellias@butlerrubin.com
Phone: 312-444-9660

*Attorneys for TreeHouse Foods, Inc., Bay Valley Foods, LLC, Flagstone Foods, Inc. and TreeHouse Private Brands, Inc.*

/s/Philip T. Carol
Philip T. Carroll
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
pcarroll@cozen.com
Phone: 312-382-3147

/s/Paul R. Bartolacci
Paul R. Bartolacci
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
pbartolacci@cozen.com
Phone: 215-665-2001

*Attorneys for Plaintiff Lloyd's Syndicate CVS 1919*